CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY NUNLEY, | ) |
| Plaintiff, | ) Case No. 7:23-cv-00702 |
| v. | ) **MEMORANDUM OPINION** |
| NURSE MARGIE COLEMAN, *et al.*, | ) By: Hon. Thomas T. Cullen |
| Defendants. | ) United States District Judge |

Plaintiff Gary Nunley ("Nunley"), a Virginia inmate proceeding *pro se*, brought this civil action against several employees of the Southwest Virginia Regional Jail Authority-Haysi facility in Haysi, Virginia ("Haysi"). Nunley contends that, while he was a pretrial detainee, insufficient cleaning protocols led to his contracting MRSA,[1] which in turn led to painful boils that were inadequately treated. This matter is before the court on motions for summary judgment filed by both Defendant Mark Combs ("Combs") and Defendants Margie Coleman ("Coleman") and Monique Yates ("Yates" and, with Coleman, "Medical Defendants"). Although Nunley filed a brief in opposition to the motion filed by the Medical Defendants, he did not submit any opposition to the motion filed by Combs. Accordingly, the motions are ripe for review.

---

[1] "Methicillin-resistant Staphylococcus aureus ('MRSA') infection is caused by a type of staph bacteria that's become resistant to many of the antibiotics used to treat ordinary staph infections." One type of MRSA infection "often begins as a painful skin boil. It's usually spread by skin-to-skin contact. At-risk populations include groups such as high[-]school wrestlers, child[-]care workers[,] and people who live in crowded conditions." Mayo Clinic, *MRSA Infection—Symptoms and Causes* (Nov. 8, 2022), *available at* https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336 (last visited Sept. 25, 2025.)

Because Nunley failed to exhaust his administrative remedies related to his claims against Combs (and failed to oppose Combs's motion), the court will grant Combs's motion for summary judgment. And while the Medical Defendants are entitled to summary judgment on the majority of Nunley's claims against them, his claim of deliberate indifference against Coleman, predicated on their interaction the night of July 20, 2023, must be submitted to a jury.

## I.

Nunley's medical records are voluminous, and although the Medical Defendants do an admirable job summarizing them, the court focuses on the brief window when Nunley claims that MRSA led to painful abscesses on his rectum.

Nunley claims that, since he arrived at Haysi in spring of 2023, he has contracted MRSA 4 separate times.[2] (ECF No. 56 at 2.)

The Medical Defendants claim that Nunley has a history of sores on his body, going back to his transfer at Haysi when, a week after he arrived, he was treated for sores on the sides of his nose. (*See* Med. Defs.'s Br. in Supp. of Mot. for Summ J. Ex. B at 142–43 [ECF No. 51-2] [hereinafter "Med. R."].) According to them, Nunley was not compliant with his medications (a trend they say continued throughout the relevant period) and frequently failed to appear for morning pill call. (*See id.* at 37.)

---

[2] Due to the fragmented nature of Nunley's filings, the court refers to them by their ECF document number and the paginations assigned by that system. Additionally, the court recognizes that, although Nunley's handwritten filings are signed, they do not appear to be sworn. Nevertheless, the court accepts Nunley's filings as being consistent with testimony he would offer at trial.

On May 29, 2023, Nunley submitted a sick-call request, complaining that his hemorrhoids were "horr[i]ble" and asking for "some medicine" because "something is not [right] down there." (*Id.* at 209.) LPN Kaleigh Harris examined him, determined that he was not suffering from hemmorroids but rather a "boil on [the] inside of [his] buttocks." (*Id.*) Although the Medical Defendants assert that Nunley was advised to cleanse the area and advise if his pain worsened or new boils appeared (*see* Med. Defs.' Br. in Supp. Mot. for Summ. J. at 4 [ECF No. 51] [hereinafter "Med. Defs.' Br."]), medical records they cite in support of this assertion do not reveal any treatment for this complaint (*see* Med. R. at 209).

The next day, May 30, FNP Crystal Large saw Nunley on a "[r]eferral from Nurse sick Call for Boils." (*Id.* at 208.) FNP Large noted that Nunley had had "this in the past and it ended up getting bad and he had to go to the hospital." (*Id.*) She prescribed oral Bactrim and intramuscular Rocephin.[3] (*Id.*)

On May 31, Nunley submitted a sick-call request, stating: "i need something for my hemroids and some more wipes my wound is draining bad im supposed to get a shot today too thank you." (*Id.* at 149.) The next day, FNP Large prescribed another antibiotic—Clindamycin. (*Id.* at 208.) Nunley only received 54% of this prescription, appearing for the first prescribed morning dose, but missing the rest; he received all evening doses. (*See id.* at 39.)

---

[3] Although the Medical Defendants claim that Nunley failed to appear for morning pill call and only received half of his Bactrim prescription (*see* Med. Defs.' Br. at 4), the cited medical records (Med. R. at 37–38) do not corroborate that Nunley was prescribed Bactrim. Perhaps its listed in his records under a generic name; there is no evidence in the Record to clarify. The court notes that his March 2023 medication history *does* show a prescription for Bactrim (*see id.* at 35), and it shows 86% compliance with that prescription, including 82% compliance with the morning pill call.

Nunley saw FNP Large again on June 6. (*See id.* at 207.) At the time, Nunley stated that he thought "this absess might need lanced" (*id.* at 151), and FNP Large's notes indicate that what was on Nunley's rectum was, indeed, an abscess (*see id.* ("Pt here at this time for follow-up after abscess.")). She visualized Nunley's rectum, noted that there was no drainage, and determined that the abscess had resolved. (*Id.*)

On June 19–21, Nunley lodged multiple sick-call requests:

June 19, 3:47 p.m.:    "i have soars on each side of my nose as soon as i quit taking antibiotics they come back."
Response, 4:04 p.m.: "Most morning you did not get up and take your antibiotics and/or your regular medications."

\*\*\*

June 19, 3:47 p.m.:    "my hemroids are horrible"
Response, 4:04 p.m.: "Do you need to see a nurse? nurse sick call?"

\*\*\*

June 19, 4:13 p.m.:    "i need to see the nurse its not hemroids they are absesses"
Response, 8:16 p.m.: "will see you on sick call"

\*\*\*

June 20, 10:59 a.m.:    "i still need to be seen i have a bad abcess on bybutt crack:
Response, 11:08 a.m.: "You will have to be brought to medical night shift stated that you refused las night."

\*\*\*

June 20, 2:41 p.m.:    "i was asleep when i fall asleep after ive took my medicine i cant gt up they should have took me down there to start with im in bad shape worse than before"
Response, 8:10 p.m.: "What do you need to be seen about? Were you seen today?"

\*\*\*

June 20, 4:26 p.m.:    "i am in horrible pain this abcess is bad please look at it"
Response, 8:11 p.m.: "Has someone seen you for this?"

- 4 -

\*\*\*

June 20, 9:41 p.m.:     "I need to be seen I have a horrible access on my butt I have not been seen"
Response, 9:46 p.m.:    "You have been seen for this, the doctor wrote in her note that it was healed."

\*\*\*

June 20, 9:49 p.m.:     "it is back it is horrible if you don't want to see me just say it"
Response, 11:53 p.m.:   "We called for you to come down at sick call, officer said you refused"

\*\*\*

June 21, 2:53 p.m.:     "i ask all day yesterday to come be soon they came way up in the night I take my medicine in the evening i cant stay awake the abcess has busted and is running down my ass crack can you see me please"
Response, 3:22 p.m.:    "I have you down for sick call again and we have attempted to see you monday and tuesday. The officer called to you again this am"

(Med. R. at 152–160.)

LPN Gloria Kelly saw Nunley on June 22, 2023, "in sallyport." (*Id.* at 206.) Nunley states that he had a hardened area near his perineum. Nurse Kelly did not note any "redness or edema," but she "[d]id not attempt to asses palpation due to being at shower." (*Id.*) She prescribed Doxcycline, a different antibiotic. Medical records reveal that Nunley was marked "absent" for all morning pill calls for this antibiotic, though he received 100% of his evening doses. (*Id.* at 38–39.)

Nunley states that, on July 8, inmate James Griffith was treated for MRSA, but was allowed to remain in the "pod" with Nunley. (ECF No. 56 at 3.) Around that same time (and likely as a result of finding out that an inmate had a contagious infection), Nunley asked for cleaning supplies with antibacterial properties, but was only offered "degreaser" to clean his cell. (*Id.*)

Nunley's abscesses returned again in July. On July 14, Nunley sent in a sick-call request, stating: "I have a big abcess on the crack of my ass just like before I got the sores in my nose first just like before now a big abcess on my but please help me the c capsule anti biotic worked last time." (Med. R. at 162.) Coleman and Nurse Hickman examined Nunley and observed a "red area that is not raised . . . nor draining," and noted that it "does not resemble a boil at this time" and that they would "monitor the area." (*Id.* at 206.) No medication or other treatment was prescribed. (*Id.*) The medical records also indicate that Nunley was told to return to medical if he needed to, and that he understood the directions. (*Id.*)

For his part, Nunley says that he was examined in the pod shower and told that antibiotics would be started. (*See* Am. Compl. at 3 [ECF No. 6]; ECF No. 56 at 3.)

The next day, Nunley placed another sick-call request indicating that he was supposed to be started on an antibiotic and that, when he arose for morning pill call, he didn't receive his medication. (*See* Med. R. at 163.) Whomever responded to his sick-call request indicated that no antibiotic had been prescribed because "no abscess [had been] seen" during his exam. (*Id.*) Nunley claims that he was told the nurses "saw or felt nothing," but that he "was never touched" during the exam. (ECF No. 56 at 3.) Coleman authored a medical note the same day (July 15) and stated: "Patient has been trying to get back on ABX [antibiotics] he has put in sick calls and there is nothing to warrant an Antibiotic he has been on Rocephin, Bactrim and Clindamycin since March of this year . . . . He was checked by 2 nurses on 7/15/23." (Med. R. at 2.)

On July 16, Nunley placed another sick-call request, stating: "the abcess on the crack of my ass is worse than on friday i cant wipe my ass will you please see me"? (*Id.* at 166.) Nurse

- 6 -

Gloria Kelly examined Nunley and observed "two small round areas on Right inner buttocks less than 1 cm. no bleeding or drainage noted . . . . no bruises and no tears are noted at this time." (*Id.* at 205.) Nunley was told that he had hemorrhoids (ECF No. 56 at 3), and was provided hemorrhoid cream and authorized to receive Motrin and Tylenol (Med. R. at 205). Nunley claims that he asked "them" for help and told them, if they didn't want to help him, just say so, and they responded "OK." (ECF No. 56 at 4.)

But the abscess continued to worsen, and the next day—July 17—Nunley placed another sick call. He stated, "Will you please see me the access on my ass has got huge and there's another one now I'm in horrible pain please bring me down." (Med. R. at 167.) Yates examined Nunley, observed that two areas "peri anus" were red and inflamed with no drainage. (*Id.* at 205.) Nunley was set to see FNP Large the next day to address his concerns; no medications were ordered. (*See id.*)

In the early morning hours of July 18, officers found Nunley apparently passed out in his cell, and LPN Garrett Hunt responded:

> Date: 07/18/2023 0540                     Author: LPN Hunt, Garrett
> Was called to 5A during PM Pill Pass due to inmate Nunley laying in the floor with pants around his knees. After arriving and waiting for a second officer to come into the pod, inmate "regained consciousness" and immediately asked me to look at his anus, as something "wasn't right". After informing inmate that I was there about him fainting and not about other problems, inmate was A+Ox3 with all VS WNL. Advised inmate to contact medical if symptoms resurface and I would get him moved to medical pod for observation. Inmate verbally agreed. Checked with inmate again when I arrived to 5A for pill pass, more statements of anal issues and stating that he wants "an antibiotic shot or some other type of antibiotics".

(*Id.* at 2.)

Later that day, FNP Large examined Nunley and observed a "[r]ed raised area with yellow center, non-draining noted to left inner buttock near anus. Firm to touch. Right rectal area near rectus has draining center noted." (*Id.* at 204.) Nunley also reported that he squeezed one of the abscesses "until he passed out and then it finally ruptured after that." (*Id.*) FNP Large diagnosed Nunley with peri-rectal abscesses, lanced the abscess, and collected some of the discharge for a wound culture. (*Id.* at 204–05.) She also prescribed a Rocephin injection and 10 days of Bactrim. (*Id.* at 204.) She also ordered that Nunley be placed in the medical unit and that he undergo "[d]aily wet to dry dressing until healed." (*Id.* at 205.)

On July 19, Nunley submitted a sick-call request related to the cleanliness of his cell in the medical unit: "the doctor said to make sure my cell was cleaned in medical before i was put in they laughed at me when i told them this she told the officer that took me to see her to not put me in a cell until it was cleaned because I had staff abcesses lanced open wounds." (*Id.* at 45.) Whomever responded advised Nunley to "address this with security." (*Id.*)

On July 20, medical personnel was called to Nunley's cell:

> Date: 07/20/2023 2105    Author: LPN Cumbo, Veronica T
> beginning at 1930; Called to Medical Pod by Officer Yates, d/t patient c/o Chest Pain. Upon entering pod, patient was in his cell, moaning in pain, with his pants down off his butt. Vital Signs were checked, 98.2, 97%, 100, 20-22, 122/100. Patient face is flushed red, sweat popped out, obvious distress noted. Patient states he has another area near the anal opening and it is causing him a lot of pain. Area looks like it is ready to pop and more redness noted as well.
> At 1950, Contacted Crystal Large, FNP, and informed her of the above and she advised to send patient out by car.
> At 2005, contacted Buchanan General, spoke to Robin, with ED Triage and gave report.
> At 2032, patient left building is route to Buchanan General escorted by Officer Yates and Officer O'Brien.

(*Id.* at 1.) Although the medical records indicate that LPN Veronica Cumbo was called to Nunley's cell, in their brief, the Medical Defendants aver that it was Coleman who was called.[4] As noted, at the direction of FNP Crystal Large, Nunley was taken to Buchanan General Hospital.

Nunley offers a different version of events, although it's unclear if he is conflating two events.[5] He claims that Coleman came to his cell after he had passed out from pain. (*See* ECF No. 56 at 5.) Nunley told Coleman that he was in severe pain and couldn't get up. (*Id.*) She allegedly told him that, if he didn't get up and get some water, she would not provide him with his medication. (*Id.*) When he couldn't get up, Coleman left. (*Id.*) He claims that, later, another nurse came in and he was then sent to Buchanan General Hospital. (*Id.*)

In any event, at the hospital, Nunley's abscess was lanced, he was given a Rocephin injection, and the wound was dressed. (Med. R. at 1.) When he returned, Coleman ordered 30 days of Mobic (*id.* at 204), and FNP Large ordered hot Epsom salt soaks 4 times per day, mupirocin ointment as needed, daily dressing changes, and Tylenol as needed for 5 days (*id.* at 203–04).

On July 23, Nunley reported that his wounds were not draining, they were "getting better," the Epsom salt soaks had helped, and that he was "almost completely healed up." (*Id.* at 169–70.) He also advised that he was ready to return to general population, even though he

---

[4] In support of this statement, they cite "Exh. B, ¶ 8." Exhibit B to their brief does not contain any numbered paragraphs. The Medical Records indicate that Coleman went to his cell earlier in the evening. (*See* Med. R. at 1.)

[5] Nunley claims he "passed out," but the medical records indicate that he fainted on July 18, not July 20. Whether Nunley is confused about the dates or whether the medical records are incorrect is not clear.

was told that he could only continue with the "sitz baths" if he stayed in medical. (*Id.* at 170–71.)

On July 26, the lab results came back from the wound culture collected on July 18: Nunley had MRSA. (*Id.* at 21.)

## II.

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.*

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022) (internal quotation omitted). But the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959 (internal quotation omitted).

### III.

Nunley brings his claims under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. Claims under § 1983 have two essential elements: (1) "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," and (2) the plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

A. <u>The Medical Defendants' Motion for Summary Judgment</u>

1. *Cleaning Protocols*

Insofar as Nunley raises claims against the Medical Defendants related to the cleaning protocols and the lack of antibacterial cleaning supplies, it is undisputed that the Medical Defendants have no role in those decisions at Haysi. In an affidavit filed in support of the Medical Defendants' motion for summary judgment, Yates stated that "[t]he nursing staff at Haysi, including the Medical Defendants named in this action, are not, and have never been, responsible for cleaning inmates' cells," and that "nursing staff did not have authority to

implement or change sanitation practices at the facility, including the cleaning agents used." (Aff. of Monique Yates ¶¶ 8–9, Feb. 13, 2024 [ECF No. 51-1].) Nunley does not appear to dispute this; he does not address it at all in his opposition brief except to say that he was placed in an uncleaned cell and to highlight a sick-call request he made about the same. (*See* ECF No. 56 at 4; ECF No. 56-1 at 4.) Absent any factual dispute regarding the Medical Defendants' responsibility for cleaning protocols, the Medical Defendants are entitled to summary judgment on all claims related to the sanitation procedures at Haysi.

2. *The Eighth Amendment*

Because Nunley was a pretrial detainee during the time period in question,[6] his claims are governed by the Fourteenth Amendment. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("But since Mays was a 'pretrial detainee and not a convicted prisoner,' the Fourteenth Amendment, and not the Eighth Amendment, governs his claim." (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988))). Accordingly, insofar as Nunley raises claims against the Medical Defendants for a violation of his Eighth Amendment right against cruel and unusual punishment, the Medical Defendants are entitled to summary judgment.

3. *The Fourteenth Amendment*

As a pretrial detainee, Nunley "cannot be subject to any form of 'punishment.'" *Id.* (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)). "The 'precise scope' of this

---

[6] The Medical Defendants aver that Nunley was booked into Haysi on November 5, 2022, and was not sentenced on his state charges until October 12, 2023. Nunley does not dispute this (although online court records indicate an arrest date of November 13, 2022; it appears Nunley was arrested on a probation violation and was not adjudged guilty and sentence under October 12, 2023. *Commonwealth v. Nunley*, Case No. CR17020315-01 (Russell Cir. Ct.)). Because the court may take judicial notice of these facts, *see Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989), it concludes that Nunley was a pretrial detainee during the summer of 2023, when he claims the Medical Defendants were deliberately indifferent to his serious medical needs.

Fourteenth Amendment right remains 'unclear.'" *Id.* (quoting *Martin*, 849 F.2d at 871). "But a pretrial detainee makes out a violation at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment, *id.* (quoting *Martin*, 849 F.2d at 871), because "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner," *Martin*, 849 F.2d at 870.

To establish a claim for deliberate indifference to a medical need in violation of the Fourteenth Amendment, a plaintiff must show that:

> (1) [the pretrial detainee] had a medical condition or injury that posed a substantial risk of serious harm; (2) that the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied* 144 S. Ct. 2631 (2024). This revised standard differs from prior iterations in that a plaintiff "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* In the wake of *Short*, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). But, as has always been the case, a showing of negligence is "not enough." *Id.* at 612.

- 13 -

A condition is objectively serious if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 U.S. 225, 241 (4th Cir. 2008) (internal quotation omitted).

As best as the court can surmise from Nunley's pleadings, he contends that his MRSA—diagnosed on or about July 18, 2023, when FNP Large obtained wound cultures—and the attendant abscesses on or near his rectum were serious medical conditions. Here, there is no serious dispute that Nunley's conditions qualify as such. As indicated by the fact that Nunley was transported to the hospital on July 20, 2023, and the various rounds of antibiotics that Nunley was prescribed, the court has no trouble concluding that Nunley suffered from a serious medical condition in and around July 2023.

The Medical Defendants ground their motion for summary judgment in the evidence that Nunley did receive some treatment; namely, he was routinely seen and administered antibiotics and sporadically given wound care in the form of Epsom salt soaks and bandage changes. Their argument, it seems, is that their treatment of Nunley's abscesses was sufficient to show that they were not deliberately indifferent.

Because liability under § 1983 is "personal, based upon each defendant's own constitutional violations," *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001), the court considers the evidence against Yates and Coleman separately. As it relates to Yates, Nunley has failed to offer any evidence that she was deliberately indifferent to his serious medical needs. In his response in opposition to the Medical Defendants motion for summary judgment, Nunley does not mention Yates by name.[7] And the medical records reveal that

---

[7] Nunley does mention Office Yates, but that refers to a male corrections officer.

Yates saw Nunley for his abscesses only once, on July 17. (*See* Med. R. at 205.) Yates observed "two area peri anus, red inflamed and no drainage," and arranged for Nunley to see FNP Large the next day. While Nunley may have preferred that Yates offer a different form of treatment, "mere '[d]isagreements between an inmate and a [medical provider] over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). This single instance when Yates arranged for Nunley to see a provider is simply insufficient as a matter of law to trigger liability for deliberate indifference.

Turning to Coleman's treatment of Nunley, the records reveal that she was more involved in his treatment than Yates, although not by much. Nunley at least mentions her by name in his opposition memo. Insofar as Nunley challenges Coleman's treatment of him for MRSA, Coleman is entitled to summary judgment. Even assuming the court could accept Nunley's claim that he has had MRSA four times, there is no evidence to suggest that Coleman's sporadic[8] treatment of him over the months he was at Haysi caused his initial or subsequent infections. And insofar as Nunley challenges her treatment of his abscesses (presumably caused by MRSA) during the summer of 2023, the medical records reveal that Coleman offered treatment, although—again—it was not Nunley's preferred course of treatment. (*See, e.g.*, Med. R. at 206 (ordering Mobic on June 22 and describing exam on July

---

[8] Nunley frequently refers to "they" in his opposition memo, leaving the court to guess whether he is referring to Coleman, Yates, both, or neither. The medical records reveal that Coleman treated his abscesses only a few times; on June 22, when she ordered Mobic (for pain); on July 14, when she examined him and noted a raised area that was not draining and did not resemble a boil "at [that] time;" and July 21, when he returned from Buchanan General Hospital and she, again, ordered Mobic. (Med. R. at 204–06.) She also saw him in his cell on July 20—prior to being taken to the hospital—when, her chart entry indicates, he "refused to get up for med pass." (*Id.* at 1.) Coleman says she asked him to get some water for his medication, but he refused, stating, "I can't get up you stupid bitch." (*Id.*)

14), 204 (ordering Mobic on July 21).) The records reveal that Coleman treated Nunley and ordered medication to address his pain; any disagreement over that course of treatment is simply not the province of a constitutional action for deliberate indifference to a serious medical need. *See Scinto*, 841 F.3d at 225.

But Coleman and Nunley's interaction in the hours before he was sent to the hospital militates a different conclusion. At the threshold, there is a material factual dispute over what occurred that night. Nunley claims that he was on the floor, in pain, possibly having passed out, but that Coleman refused him medication and medical treatment because he could not get up from the floor to retrieve his own water. (ECF No. 56 at 5.) Coleman counters that she asked him to get some water for his medication but that he "refuse[d] stating 'I can't get up you stupid bitch.'" (Med. R. at 1.)

If it were to accept Nunley's version of events, a reasonable jury could conclude that Coleman's refusal to supply Nunley with his medication or to address his debilitating pain rises to the level of deliberate indifference. Under the controlling precedent in this Circuit, intentional delay of (or interference with) medical treatment can amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Sharpe v. S.C. Dept. of Corrections*, 621 F. App'x 732, 734 (4th Cir. 2015) (per curiam) (unpublished).[9] As relayed by

---

[9] Although the cited cases concerned allegations that deliberate indifference violated the inmate's right to be free from cruel and unusual punishment under the Eighth Amendment, they are nevertheless controlling here. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) ("So even though Mays's claim arises under the Fourteenth Amendment, we have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs.").

Nunley, he was in pain that was so severe it caused him to pass out and, when he came to, left him unable to stand or walk. What's more, when a nurse checked on him later in the evening, he was immediately ordered to the hospital for treatment. Under these facts, the court simply cannot conclude that no reasonable jury could find that Coleman's refusal to act did not rise to the level of deliberate indifference. Accordingly, she is not entitled to summary judgment on Nunley's deliberate-indifference claim related to their interaction on July 20, 2023.

### B. Combs's Motion for Summary Judgment

The Prison Litigation Reform Act ("PLRA") requires inmates who seek to file suit "with respect to prison conditions under section 1983" to exhaust "such administrative remedies as are available" before filing an action in court. 42 U.S.C. § 1997e(a). "To comply with § 1997e(a), an inmate must properly follow each step of the established grievance procedure that the facility provides to inmates and meet all deadlines within that procedure before filing his § 1983 action." *Muhammad v. Fleming*, No. 7:17cv00481, 2023 WL 6456486, at *2 (W.D. Va. Sept. 30, 2023) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006)). "An 'untimely or otherwise procedurally defective administrative grievance' does not satisfy the PLRA's exhaustion requirement." *Id.* (quoting *Woodford*, 548 U.S. at 83–84). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Combs contends that, prior to filing suit, Nunley failed to exhaust the administrative remedies available to him at Haysi. In support of his argument, Combs has submitted an affidavit from Jeannine Patrick, the Administrative Lieutenant for the Southwest Virginia Regional Jail Authority ("SWVRJA"), the entity the runs the facility at Haysi. According to

Ms. Patrick, the administrative exhaustion procedure for SWVRJA facilities is outlined in the inmate handbook, a copy of which was made available to Nunley when he was first brought to Haysi. (Aff. of Jeannie Patrick ¶ 2, Oct. 9, 2024 [ECF No. 53-1]; *id.* Ex. A (Inmate Handbook [ECF No. 53-2]; *id.* Ex. B (Nunley orientation documentation) [ECF No. 53-3].) According to the SWVRJA handbook, an inmate initiates the grievance process by first making a "good[-]faith attempt to resolve the issue through informal channels by use of a Request Form or Medical Request Form . . . ." (Patrick Aff. Ex. B. at 28.) If the inmate is dissatisfied with the response to his request form, he may file a grievance within 7 days of the occurrence that gave rise to his complaint. (*Id.*) The grievance will then be reviewed "to determine if it meets the definition of a grievance and it proper informal resolution attempts have been made." (*Id.*) Whether the grievance is deemed valid or not, the inmate will receive a response within 9 days. (*Id.* at 28–29.) If the inmate is not satisfied with the response to his grievance, he may appeal the result, "in writing, within 7 days of receipt of the response to the Chief of Security, who will process the appeal." (*Id.* at 29.) An appeal is the final level of review.

The uncontroverted[10] record before the court establishes that Nunley failed to exhaust his administrative remedies. Ms. Patrick's affidavit, which is under oath and has not been

---

[10] Combs filed his motion for summary judgment on October 9, 2024. (ECF No. 53.) Consistent with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court notified Nunley that the motion was filed, that he had 21 days to respond, and that if he failed to respond, "the Court will assume that [he] has lost interest in the case, and/or that [he] agrees with what the Defendant states in their responsive pleading(s)." (Notice, Oct. 10, 2024 [ECF No. 54].) Nunley was also notified that, if he "wishes to continue with the case, it is necessary that [he] respond in an appropriate fashion," and that he could "respond with counter-affidavits or other additional evidence." (*Id.*) Although Nunley responded to the Medical Defendants motion for summary judgment, he did not file a separate opposition to Combs's motion, nor did he address Combs's exhaustion arguments in any other pleadings (or his response to the Medical Defendants' motion). Accordingly, Jeannine Patrick's affidavit, offered in support of Combs's motion for summary judgment, averring that Nunley "failed to exhaust the administrative remedies available to him before instituting the present action," is the only relevant and admissible testimony on the issue of exhaustion. (Patrick Aff. ¶ 13.)

contradicted by any evidence in the record (let alone Nunley's own evidence or testimony), establishes that Nunley did not file an informal complaint about any issues involving Officer Combs, nor did he appeal the denial of a medical request related to Officer Combs. (Patrick Aff. ¶ 5.) What's more, Nunley was well-versed with the grievance process at Haysi; "he used the grievance procedures 75 times between May 1, 2023 and October 2, 2023." (*Id.* ¶ 7.) His failure to properly exhaust his administrative remedies prior to filing suit is fatal to his claims against Combs, and Combs is entitled to summary judgment on the claims against him.

## IV.

For the reasons discussed above, both Combs and Yates are entitled to summary judgment on the claim against them, and Coleman is entitled to summary judgment on the claims against her, except for Nunley's deliberate-indifference claim related to their July 20 interaction. That claim must go to trial.

The Clerk is directed to forward a copy of this Order to the parties.

**ENTERED** this 30th day of September, 2025.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE